STANDARD TABLE OIL CLOTH COMPANY

*v.*

TRENTON OIL CLOTH AND LINOLEUM COMPANY.

[Decided May 15th, 1906.]

1. A corporation will not be restrained from stamping the initials of its corporate name on its goods, though another corporation previously used the same initials as a part of its trade mark.

2. Where complainant used as its label "Standard T. O. C. Company," enclosed in an ellipse, another corporation which stamped on its goods the words "superior quality," enclosed in an ellipse in the position occupied by the words "Standard Company," together with the initials of its corporate name, "T. O. C. & L. Co.," will be enjoined from using the initials "T. O. C." in connection with the ellipse.

On bill by the Standard Table Oil Cloth Company against the Trenton Oil Cloth and Linoleum Company to restrain the latter from using a label claimed by the complainant.

*Messrs. Pitney & Hardin,* for the complainant.

*Mr. Edwin R. Walker,* for the defendant.

STEVENS, V. C.

This case lies within a very narrow compass. The complainant was organized as a corporation under the laws of this state in July, 1901. The defendant, which is also a New Jersey corporation, was originally organized in 1887 under the name of the Trenton Oil Cloth Company, but in 1898 it changed its name to that of the Trenton Oil Cloth and Linoleum Company. The complainant, very shortly after its organization, began to use as a mark or label for its goods the letters "T. O. C.," arranged thus:

It will be observed that the word "Standard" is printed over the "T," and the word "Company" under, and the whole is enclosed by an ellipse. In July, 1902, at the request of a customer, the defendant marked five thousand pieces of its goods with a oTc, surrounded by an ellipse, the word "Superior" taking the place of the word "Standard," and the word "Com-

pany" being omitted. This was a palpable imitation. On October 9th, 1902, the attention of defendant was called to the matter, and it at once discontinued the use of the oTo, with an expression of regret for having trespassed on complainant's rights. From that time on it adopted a label like the following:

In this label "Superior" takes the same position in the ellipse as "Standard," and "Quality" as "Company." The complainant's mark is in light green; the defendant's in dull red. The defendant's mark was objected to by complainant and a correspondence ensued, beginning on July 5th, 1904, and ending on December 12th, 1904. On August 19th, 1904, the defendant wrote a letter to complainant, in which it stated that it was advised by its attorney that its trade mark was no infringement upon that of the complainant, "because of the conspicuous dissimilarity between them." In this letter occurs the following passage:

"We prefer not to have any trouble with our competitors of any kind. We have always been on a friendly footing with them, as far as we know, and would say this, if the ellipse is what you and the Standard people take exception to in the marking of our goods, while the writer at this time will make no positive promise, we might consider discontinuing this certain feature in the marking of our goods, if by our doing so the Standard people would feel any better. If we should do this, it would simply be done out of courtesy. If, however, you and the Standard people still feel inclined that you have a right to insist upon our not only discontinuing the use of the ellipse, but that part of the marking of our goods which contains the letters T. O. C., then, as we have above intimated, we shall have to allow the court to decide this between us."

Instead of acceding to this offer the complainant replied by letter of August 30th:

"We think you are perhaps laboring under a misunderstanding as to the legal rights of the Standard Oil Cloth Company. This corporation is the owner of two registered trade marks, one consisting of the letters T. O. C., surrounded by an ellipse, and the other having the letters T. O. C. alone; that is, without any ellipse."

This broader claim it persisted in maintaining up to the commencement of this suit.

I think it quite clear that complainant cannot restrain defendant from stamping the initials of its name upon its goods, more especially as that name was taken several years before complainant was incorporated. All that complainant can ask is that defendant shall not be allowed to use marks, letters or other *indicia* by which he may induce purchasers to believe that the goods which it is manufacturing and selling are the manufacture of another person. *International Silver Co.* v. *Rogers Corporation, 66 N. J. Eq. (21 Dick.) 119, 125;* on appeal, *60 Atl. Rep. 187.* It is not necessary to prove that the defendant's marks or figures are identical with those of complainant, for, as was well said by Justice Bradley, in *Celluloid Company* v. *Cellonite Company, 32 Fed. Rep. 94,* "similarity, not identity, is the usual recourse where one party seeks to benefit himself by the good name of another." And, in the words of Lord Cranworth: "It would be a mistake to suppose that the resemblance must be such as would deceive persons who should see the two marks placed side by side."

In the case in hand the defendant had been in business since 1887. It had not, prior to the year 1902, so far as appears, stamped the words T. O. C. upon its manufacture, nor had it used an ellipse. When, at the request of its customer, Feuerstein, it stamped upon its goods oTc, enclosed in that figure, it did an act plainly calculated to deceive buyers. It says that it had no intention of palming off its goods as those of complainant, and that as soon as it was informed that the label which Feuerstein had asked for was an imitation of complainant's label it stopped using it. The label, after the objectionable oTc had been taken out of it and the letters T. O. C. & L. Co. substituted, still bore some resemblance to complainant's label, and inasmuch as it had never found it necessary to use an ellipse before, and inasmuch as the letters T. O. C. (part of the initials T. O. C. & L. Co.) were still conspicuous in an ellipse resembling in form the complainant's ellipse, and the words "Superior" and "Quality" still maintained their place in the same relative positions as "Standard" and "Company" in com-

·plainant's label, I think it ought to have abandoned the ellipse and substituted some other geometrical figure. Indeed, it offered to abandon it, but did not, because complainant persisted in the untenable position that T. O. C. was its exclusive property. With the ellipse enclosing the T. O. C., and with the words "Superior" and "Quality" placed as they are, there is still considerable·similarity between the two stamps. There is great force in the following observation of Lord-Justice Lindley, in *Powell* v. *Birmingham Vinegar Brewery Co., 2 Ch. 69 (1896)* : "A person who designs or adopts a mark to denote his goods imposes no unreasonable burden on rivals in trade by forbidding them from using the same mark to denote similar goods, if the public are thereby misled, but to monopolize the use of words imposes a much more serious burden. Consequently limits have been put to the right to complain of the use of words which have not been put to the right to the use of marks." In the case principally relied upon in defendant's brief (*Ligett Tobacco Co.* v. *Finzer, 128 U. S. 182*) the distinguishing features of the two trade marks were so pronounced that it was thought that there could be no possibility that persons using their eyes would be misled. The question is always one of degree of resemblance. It may not always be easy to draw the line between resemblance calculated to mislead and non-resemblance, but it must, nevertheless, be drawn, and drawn with reference to the facts of the particular case.

The evidence here is that the class of buyers of the goods on which complainant's label is stamped is largely made up of uneducated foreigners living on the east side of New York City, and among this class the defendant's label might, in the hands of interested or unscrupulous retailers, be made an instrument of deception, the purchaser having no opportunity of seeing the two stamps side by side. I think an injunction should issue restraining the use of the ellipse in combination with the letters ·T. O. C. As the defendant made an offer to discontinue its use and this offer was refused by complainant, who insisted upon more than he was entitled to, I think each side should.pay its ·own costs.